United States District Court
Southern District of Texas
**ENTERED**
July 24, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **JOSEPH KEITH PAYNE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23-cv-3067** |
| | § | |
| **COUNTY OF HARRIS, et. al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendant City of Houston's ("City") Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b) (ECF No. 14), Defendants Assistant District Attorney Shanice Newton ("Newton") and Assistant District Attorney Alycia Harvey's ("Harvey") Rule 12(b)(4) and 12(b)(6) Motion to Dismiss Complaint and Stay Discovery (ECF No. 15), and Defendants Harris County, Kim Ogg ("Ogg"), and Harris County District Attorney's Office's ("the Harris County DA's Office") 12(b)(6) Motion Dismiss Plaintiff's First Amended Complaint (ECF No. 17).[1] Based on a review of the motions, arguments, and relevant law, the Court **RECOMMENDS** the City's Motion to Dismiss (ECF No. 14) be **GRANTED**, Newton and Harvey's Motion to Dismiss (ECF No. 15) be **GRANTED**, and Harris County, Ogg, and the

---

[1] On May 15, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 40).

Harris County DA's Office's Motion to Dismiss (ECF No. 17) be **GRANTED**. Accordingly, the Court **FURTHER RECOMMENDS** Plaintiff's claims against the City, the Houston Police Department, Newton, Harvey, Harris County, Ogg, and the Harris County DA's Office be **DISMISSED WITH PREJUDICE**.

## I.    Background[2]

This case stems from of an aggravated robbery that occurred on October 7, 2021. (ECF No. 13 at ¶¶ 34, 36).

On October 7, 2021, a victim reported an aggravated robbery that occurred while the victim walked to his vehicle in a parking garage. (*Id.* at ¶¶ 37–38). The victim stated he was walking to his vehicle parked on the second floor of the garage when he was struck in the back of his head from behind. (*Id.* at ¶ 37). The victim fell to the ground. (*Id.*). As the victim stood up, he stated two individuals pointed firearms at him and took his wallet, cash, watch, and a bag of jewelry. (*Id.* at ¶ 38). The victim told police he observed the alleged robbers leaving the parking garage in a silver sedan. (*Id.* at ¶ 39).

Detective Latrice Thorton ("Thorton") with the Houston Police Department investigated the case. During her investigation, she reviewed

---

[2] The Background section is based on the allegations made in Plaintiff's First Amended Petition. (*See* ECF No. 13).

surveillance footage from the parking garage and saw an individual walking towards the area of the robbery on foot. (*Id.* at ¶¶ 40–43). Thorton described the individual as "a light skinned Black male with a thin black mustache over his top lip" who wore a "distinguishable gold necklace and glasses." (*Id.* at ¶ 43).

Thorton next met with Sergeant Dunn ("Dunn"), who was working "approved extra employment" nearby. (*Id.* at ¶ 44). Dunn reportedly saw two Black males inside the parking garage talking near the silver sedan at approximately 5:45 p.m. (*Id.* at ¶¶ 45–49). Dunn stated they left the location shortly after and returned at approximately 6:45 p.m., at which time they spoke to him. (*Id.* at ¶¶ 45-47). "Dunn stated the silver sedan stopped in front of his parked vehicle, and the passenger rolled down the window and stated they were there to conduct business and not to cause problems." (*Id.* at ¶ 47). After Dunn saw the silver sedan leave the garage, Dunn began driving on a nearby street and ordered a marked patrol unit, driven by Officer Hinojosa ("Hinojosa"), to follow Dunn's vehicle. (*Id.* at ¶ 53).

Dunn and Hinojosa attempted to initiate a traffic stop on the silver sedan. (*Id.* at ¶¶ 44–57). The vehicle sped away from the officers. (*Id.* at ¶ 58). During the chase, Hinojosa observed the passenger stick his head out of the vehicle and fire approximately four to five shots in the direction of the

officers.  (*Id.* at ¶ 60).  Two Black males ultimately jumped out of the vehicle and fled.  (*Id.* at ¶ 64).

Fingerprints, DNA, two handguns, and property stolen during the aggravated robbery were recovered from the abandoned vehicle.  (*Id.* at ¶¶ 67, 72).  David Mason ("Mason") was the registered owner of the vehicle.  (*Id.* at ¶ 69).  Dunn also identified Mason from a photo array as the person he briefly spoke to in the parking garage.  (*Id.* at ¶ 73).  Officer Jarobe ("Jarobe") with the Midwest Crime Suppression Team researched Mason's Facebook posts and discovered Mason was friends with Plaintiff, who resembled the person in the surveillance video from the parking garage.  (*Id.* at ¶ 74).  Thorton also spoke with Agent Adrian Healy ("Healy") from the Galveston Task force regarding the case.  (*Id.* at ¶ 76).  Healy had previously encountered Plaintiff and identified the still image photo of the suspect on the surveillance video as Plaintiff.  (*Id.*).

On December 3, 2021, Thorton and Detective Baker ("Baker") interviewed Mason.  (*Id.* at ¶ 77).  Mason stated he and Plaintiff were in Mason's vehicle at the parking garage and that Plaintiff shot at the officers.  (*Id.* at ¶¶ 78, 80).  Mason also stated he pulled his vehicle over during the attempted traffic stop but drove away after Plaintiff threatened him.  (*Id.* at ¶ 80).  Thorton showed Mason a photograph of the individual on the surveillance

footage, Plaintiff's Facebook, and Plaintiff's driver's license photo.  (*Id.* at ¶ 81). Mason identified each photo as Plaintiff.  (*Id.*).

Plaintiff was ultimately arrested and charged with aggravated robbery, three counts of aggravated assault on a peace officer, and unlawful possession of a firearm by a felon.  (*Id.* at ¶ 83).

On February 10, 2022, Plaintiff's attorney emailed Newton, the prosecutor assigned to the aggravated robbery case, and stated he had video evidence placing Plaintiff in Galveston County at the time of the robbery.  (*Id.* at ¶¶ 87–88).  On February 16, 2022, a grand jury returned an indictment in Plaintiff's case finding probable cause.  (*Id.* at ¶ 89).  Plaintiff's attorney continued emailing Newton through February and March regarding discovery and surveillance photos from the scene of the robbery.  (*Id.* at ¶¶ 90–91, 93–94).  On March 13, 2022, Newton explained to Plaintiff's attorney via email why they believed there was probable cause that Plaintiff committed the crime. (*Id.* at ¶¶ 95–97).

On June 14, 2022, fingerprint evidence taken from the vehicle used in the aggravated robbery came back as David Mason and his brother's fingerprints.  (*Id.* at ¶ 119).  On July 1, 2022, the Harris County DA's Office dismissed its case against Plaintiff.  (*Id.* at ¶ 124).

On June 23, 2023, Plaintiff filed his original petition in the 125th Judicial District Court of Harris County, Texas against the City, Harris County, the Houston Police Department, Chief of the Houston Police Department Troy Finner, the Harris County DA's Office, Ogg, Thorton, Dunn, Hinojosa, Jarobe, Healy, Baker, Harvey, Newton, and Mason. (ECF No. 1-1 at ¶¶ 3–15). Plaintiff alleged violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and violations of state law claims. (*Id.* at ¶¶ 137–241). On August 21, 2023, the City removed the case to federal court. (ECF No. 1). After removal, multiple Defendants filed Motions to Dismiss.[3] (ECF Nos. 4, 6–7).

On October 3, 2023, Plaintiff filed his First Amended Petition. (ECF No. 13). Plaintiff alleges the following causes of action under Section 1983 against all Defendants:

(1) false arrest and imprisonment in violation of the Fourth and Fourteenth Amendments (*Id.* at ¶¶ 219–29);

(2) unlawful detention in violation of the Fourth and Fourteenth Amendments (*Id.* at ¶¶ 230–36);

---

[3] Judge Andrew Hanen denied these motions as moot. (ECF No. 39).

(3) malicious prosecution in violation of the Fourth and Fourteenth Amendments (*Id.* at ¶¶ 237–48);

(4) excessive force in violation of the Fourth and Fourteenth Amendments (*Id.* at ¶¶ 249–67);

(5) denial of fair trial in violation of the Fourth and Fourteenth Amendments (*Id.* at ¶¶ 268–71); and

(6) failure to intervene in violation of the Fourth Amendment (*Id.* at ¶¶ 272–82).

Plaintiff also alleges the following causes of action against Defendants Thorton, Dunn, Hinojosa, Jarobe, Baker, Healy, Newton, Harvey, and Mason:

(1) malicious prosecution in violation of Texas law (*Id.* at ¶¶ 287–90);

(2) false arrest and false imprisonment in violation of Texas law (*Id.* at ¶¶ 291–95); and

(3) assault and battery in violation of Texas law (*Id.* at ¶¶ 296–300).

Finally, Plaintiff alleges false report to peace officer/investigator in violation of Texas Penal Code § 37.08 against Defendants Healy, Mason, and Thorton. (*Id.* at ¶¶ 301–05).

In response, many of the Defendants filed Motions to Dismiss. (ECF Nos. 14–15, 17).

## II.    Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).   When considering a motion to dismiss, a court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).   In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).   To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).   Although all reasonable inferences will be resolved in favor of a plaintiff, a plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *see also Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) ("Although a

complaint does not need detailed factual allegations, the allegations must be enough to raise a right to relief above the speculative level . . . .") (internal quotations omitted)). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Firefighters' Ret. Sys.*, 894 F.3d at 669 (quoting *Iqbal*, 556 U.S. at 678). "The court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint." *Santerre v. Agip Petroleum Co., Inc.*, 45 F. Supp. 2d 558, 568 (S.D. Tex. 1999) (internal quotations omitted).

To determine whether to grant a Rule 12(b)(6) motion, a court may only look to allegations in a complaint to determine their sufficiency. *Id.*; *Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175-TJW, 2011 WL 1004880, at *1 (E.D. Tex. Mar. 18, 2011). "A court may, however, also consider matters outside the four corners of a complaint if they are incorporated by reference, items subject to judicial notice, matters of public record, orders, items appearing in the record of a case, and exhibits attached to a complaint whose authenticity is unquestioned." *Joubert on Behalf of Joubert v. City of Houston*, No. 4:22-cv-3750, 2024 WL 1560015, at *2 (S.D. Tex. Apr. 10, 2024).

## III.   Discussion

Pending before the Court are the City and the Houston Police Department's Motion to Dismiss (ECF No. 14), Newton and Harvey's Motion

to Dismiss (ECF No. 15), and Harris County, Ogg, and the Harris County DA's Office's Motion to Dismiss (ECF No. 17).  The Court will address each motion in turn.

> a. <u>The City and the Houston Police Department's Motion to Dismiss (ECF No. 14)</u>

The City[4] and the Houston Police Department argue Plaintiff's First Amended Petition should be dismissed pursuant to Rule 12(b)(6) because (1) the Houston Police Department is not a proper party defendant; (2) Plaintiff fails to plausibly allege a constitutional violation to support a § 1983 claim; (3) Plaintiff fails to state a claim against the City under § 1983; (4) the City has governmental immunity from Plaintiff's state law claims; and (5) Plaintiff's request for punitive damages cannot be awarded.  (ECF No. 14 at 11–25).

---

[4] For purposes of the City's Motion to Dismiss, the Court takes judicial notice of the Harris County District Clerk records for the following criminal cases: Cause No. 1750789, Cause No. 1750791, and Cause No. 1750787.  (*See* ECF No. 14 at 11); *see Prosper v. City of Houston*, No. 4:23-cv-2603, 2024 WL 1184175, at *2 (S.D. Tex. Feb. 13, 2024), *report and recommendation adopted*, No. 4:23-cv-02603, 2024 WL 1186722 (S.D. Tex. Mar. 19, 2024) ("[T]he court may take judicial notice of public documents, and may also consider documents a defendant attaches to its motion to dismiss under 12(b)(6) if the documents are referenced in the plaintiff's complaint and are central to the plaintiff's claims."); *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 327 (E.D. Tex. 2021) ("Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice.").

### i. The Houston Police Department

The Houston Police Department argues Plaintiff's First Amended Petition should be dismissed because it is not an entity with the capacity to be sued. (*Id.* at 11).

It is well settled in the Southern District of Texas that the Houston Police Department is "a subdivision of the City of Houston and therefore does not have a separate legal identity that would allow it to sue and be sued." *McAfee v. Houston Police Dep't*, No. 19-cv-112, 2019 WL 12021829, at *1 (S.D. Tex. Mar. 19, 2019); *see, e.g.*, *Chavez v. Alvarado*, 550 F. Supp. 3d 439, 450 (S.D. Tex. 2021) (dismissing claims against the Houston Police Department with prejudice because it is not a separate legal identity); *Menefee v. Houston Police Dep't*, No. 4:14-cv-01705, 2016 WL 3093131, at *5–6 (S.D. Tex. May 11, 2016) (examining the City of Houston's charter and dismissing the claims against the Houston Police Department because it is not a separate entity), *report and recommendation adopted*, No. 14-cv-1705, 2016 WL 3077487 (S.D. Tex. May 31, 2016); *Henry v. City of Houston*, No. 10-cv-2545, 2012 WL 950061, at *6 (S.D. Tex. Mar. 19, 2012) ("The City of Houston Police Department is a department within the City of Houston and does not qualify as an independent entity with capacity to sue or be sued. Therefore, plaintiff cannot assert a cause of action against the City of Houston Police Department.").

11

Accordingly, the Court recommends Plaintiff's claims against the Houston Police Department be dismissed.

### ii. The City

The City seeks dismissal under Rule 12(b)(6), arguing that Plaintiff has failed to state a claim under Section 1983. (ECF No. 14 at 21). The City also moves to dismiss Plaintiff's state law tort claims against it under Rule 12(b)(1) for lack of subject matter jurisdiction. (*Id.* at 24).

### 1. <u>Section 1983</u>

Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights. 42 U.S.C. § 1983. Importantly, § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). To prevail upon a Section 1983 claim, a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

Plaintiff's First Amended Petition appears to assert three theories of municipal liability: that the City (1) had multiple unconstitutional policies,

practices, and/or customs, (2) failed to adequately train or supervise, and (3) ratified unconstitutional conduct. While Plaintiff need not offer proof of his allegations at this stage, he "still must plead facts that plausibly support each element of § 1983 municipal liability under" each of his theories. *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678).

### a. Policy Liability

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To establish a §1983 claim against a municipality, "a plaintiff must demonstrate three elements: a policymaker; an official policy [or custom]; and a violation of constitutional rights whose moving force is the policy or custom." *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (internal quotation marks omitted). "[U]nder § 1983, local governments are responsible only for their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted) (emphasis in original). "[I]n other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691.

13

The City argues "Plaintiff has failed to carry his burden of specifically identifying an official City policy or custom that was the moving force behind an alleged violation of his constitutional rights." (ECF No. 14 at 23). Plaintiff's First Amended Petition alleges multiple policies:

(1) The City has "the policy and/or custom . . . to inadequately supervise and train its officers, staff, agents, and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents, and employees." (ECF No. 13 at ¶ 225; *see also id.* at ¶¶ 243, 278).

(2) The City "has a policy, custom, and/or practice of detaining persons for an excessive period of time prior to arraignment." (*Id.* at ¶ 226).

(3) "Defendants had a policy and/or custom of maliciously prosecuting individuals despite the lack of probable cause."[5] (*Id.* at ¶ 242).

(4) "[I]n 2021, . . . Defendant City had a policy or routine practice of alleging facts against persons for the purpose of charging crimes they did not commit." (*Id.* at ¶ 247).

---

[5] Plaintiff asserts this claim against "All Defendants." (*See id.* at ¶¶ 249–67).

14

(5) "The excessive force used against the Plaintiffs [sic] occurred pursuant to Houston Police Department Policy and City of Houston's policies, practices, or customs." (*Id.* at ¶ 255).

(6) "Defendants had a policy and/or custom of failing to intervene to protect citizens from false arrest, imprisonment and malicious prosecution by police officers and district attorneys."[6] (*Id.* at ¶ 277).

An official policy can exist in two ways. "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). Second, an official policy may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). Proof of a custom or policy can be shown by "a pattern of unconstitutional conduct . . . on the part of municipal actors or employees," or where "a *final policymaker* took a single unconstitutional action." *Zarnow*, 614 F.3d at 169 (emphasis in original). "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and

---

[6] Plaintiff asserts this claim against "All Defendants." (*See id.* at ¶¶ 272–82).

acceptance of the disputed conduct." *Id.* "Consistent with the commonly understood meaning of custom, proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy." *Paz v. Weir*, 137 F. Supp. 2d 782, 799 (S.D. Tex. 2001). Because Plaintiff points to no formal policy statement, he must demonstrate the City's liability by establishing a pattern of unconstitutional conduct, or that a final policymaker took a single unconstitutional action. *Schweitzer v. Dagle*, No. 3:22-cv-00273, 2024 WL 1348415, at *13 (S.D. Tex. Mar. 27, 2024), *report and recommendation adopted*, No. 3:22-cv-273, 2024 WL 1622636 (S.D. Tex. Apr. 15, 2024).

Here, Plaintiff provides close to thirty pages of "additional facts" that detail prior instances involving some of the Defendants. (ECF No. 13 at ¶¶ 135–98). However, most of Plaintiff's additional facts are "conclusory and devoid of critical factual enhancement." *Verastique v. City of Dallas, Texas*, No. 23-10395, 2024 WL 3325881, at *3 (5th Cir. July 8, 2024). For example, Plaintiff references cases ranging from 1977 to 2023, if a date for the alleged incident is provided at all, and presents a "hodge-podge of unrelated allegations" in an unorganized manner such that "[the incidents] cannot plausibly establish a pattern of constitutional violations." *Id.* at *3–4. Plaintiff fails to allege with any specificity *how* these instances, and the others alleged in his First Amended Petition, establish a pattern in any of the City's alleged

16

policies.  *Id.* at *4 (finding a court correctly dismissed a *Monell* claim premised on a city's failing adequately to discipline its officers where all nineteen incidents described in the complaint lacked "similarity and specificity" and did not "point to the specific violation in question").  Even in his Response, Plaintiff mostly discusses case law regarding *Monell* claims and simply asserts that "[t]hese incidents demonstrate a pattern of the harm at issue, that being false arrest, and use the only source available to Plaintiff at this time [sic] public records and reporting to substantiate the allegations at this stage."  (ECF No. 21 at 18).

"Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."  *Zavala v. Harris Cnty., Texas*, No. 22-20611, 2023 WL 8058711, at *2 (5th Cir. Nov. 21, 2023) (internal quotations omitted).  Further, "[a] pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'"  *Peterson*, 588 F.3d at 851 (quoting *Est. of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).  It is not the Court's responsibility to infer that problems are reoccurring; rather, it is Plaintiff's burden to show a pattern of

violations. *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 303 (5th Cir. 2023). Here, "[t]he incidents to which [Plaintiff] points do not have the requisite similarity to be deemed a custom, adopted as official policy, and are not analogous to the facts." *Zavala*, 2023 WL 8058711, at *2.

Thus, the Court finds Plaintiff fails to plead (1) a policy to inadequately supervise and train, (2) a policy of detaining persons for an excessive period of time prior to arraignment, (3) a policy of maliciously prosecuting individuals, (4) a 2021 policy or routine practice of alleging facts against persons for the purpose of charging crimes they did not commit, (5) a policy of excessive force, or (6) a policy of failing to intervene to protect citizens from false arrest, imprisonment, and malicious prosecution. *See, e.g.*, *id.* at 851 n.4 ("Twenty-seven incidents in four years, with no context as to the overall number of arrests or any comparisons to other cities, is not sufficient evidence of a pattern rising to the level of a[n excessive force] policy."); *Plemons v. Amos*, 306 F. App'x 160, 162 (5th Cir. 2009) (reversing a district court's judgment that a city unconstitutionally detained an individual where there was no evidence that a city policy was the moving force behind the violation); *West v. City of League City*, No. 3:21-cv-371, 2023 WL 5760032, at *7 (S.D. Tex. Mar. 31, 2023) (finding inadequate-training allegations insufficient because the plaintiff failed to allege with any specificity how the program was defective); *Reyes v.*

18

*Greer*, 686 F. Supp. 3d 524, 548 (W.D. Tex. 2023) (finding plaintiff "failed to plead a custom of malicious prosecution because he did not point to similar violations").

### b. Failure to Train or Supervise

To establish *Monell* liability based on a municipality's failure to train or supervise,

> a plaintiff must "prove that (1) the [municipality] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."

*Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Pena*, 879 F.3d at 623). "To show deliberate indifference, a plaintiff . . . must allege a 'pattern of similar constitutional violations by untrained employees.'"[7] *Id.* (quoting *Connick*, 563 U.S. at 62).

Plaintiff's First Amended Petition repeats the general allegation that the City failed to train (*See* ECF No. 13 at ¶¶ 209, 225, 243, 264, 278) or supervise (*Id.* at ¶¶ 207, 209, 211, 225, 243, 264, 278) throughout the petition. However, "Plaintiff[] do[es] not provide any facts from which the court can draw a causal

---

[7] If a plaintiff does not allege a pattern, it is "possible to establish deliberate indifference through the single-incident exception." *Hutcheson*, 994 F.3d at 482. However, Plaintiff does not allege the single-incident exception applies here.

connection between any failure to train [or supervise] and the alleged constitutional violations." *See Garcia v. Harris Cnty.*, No. 4:22-cv-198, 2022 WL 2230469, at *3 (S.D. Tex. June 2, 2022), *report and recommendation adopted*, No. 4:22-cv-198, 2022 WL 2222972 (S.D. Tex. June 21, 2022). Further, Plaintiff's assertions that the City acted with "deliberate indifference," without factual support, does not sufficiently allege the "pattern of similar constitutional violations by untrained employees" necessary to satisfy the deliberate indifference prong. *Hutcheson*, 994 F.3d at 482 (internal quotations omitted). Thus, the Court recommends Plaintiff's claims against the City under a failure to train or failure to supervise theory be dismissed.

### c. *Ratification*

A municipality may also be held liable under *Monell* by the theory of "ratification." *See Garcia*, 2022 WL 2230469, at *4. Ratification applies to "a scenario in which a municipality could be held liable for a single episode of conduct initiated by a non-policymaker employee." *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004). Courts in this district have acknowledged that "[t]he precise standard by which to plead a ratification theory is somewhat unclear." *Taylor v. Hartley*, 488 F. Supp. 3d 517, 537 (S.D. Tex. 2020); *see also Garcia v. Harris Cnty. Tex.*, No. 4:23-cv-0542, 2024 WL 1291531, at *6 (S.D. Tex. Mar. 26, 2024) (explaining the Fifth Circuit's history

regarding municipal liability under a ratification theory). "Nonetheless, 'a clear prerequisite is knowing approval by a policymaker of both conduct and its underlying, improper basis.'" *Garcia*, 2024 WL 1291531, at *6 (quoting *Taylor*, 488 F. Supp. 3d at 537).

Here, Plaintiff's First Amended Petition does not enumerate specific official policies and only provides vague ratification allegations. (ECF No. 13 at ¶¶ 210–11). Plaintiff's First Amended Petition states, "The [] City, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants Finner, Thorton, Dunn, Hinojosa, Jarobe, and Baker heretofore described. Defendant City had actual notice of previous problems and complaints concerning its officers yet failed to take corrective action." (*Id.* at ¶ 210). Plaintiff then adds:

> Defendant City had actual notice of previous supervisory concerns with officers concerning their honesty and culpability in the past. Specifically, a lawsuit that was filed in 2021 concerning a botched drug raid, which led to hundreds of drug cases being dismissed due to Officer Goins. Goins, a thirty-year veteran, who is charged with murder was found to have lied on arrest affidavits to obtain probable cause for search warrants. There were also several other officers who were charged for attempting to cover up Goins's crimes.

(*Id.* at ¶ 211).

These conclusory allegations do not provide the Court with facts showing that a policymaker approved the alleged unconstitutional conduct described in

the complaint, whether or when a policymaker learned about the alleged conduct, or whether a policymaker made a statement approving of or in defense of the alleged conduct. *See Garcia*, 2022 WL 2230469, at *4.

Thus, the Court finds Plaintiff's First Amended Petition does not provide the facts necessary to support ratification. Accordingly, the Court recommends Plaintiff's Section 1983 claims against the City be dismissed.

### 2. State Law Claims

The City also argues Plaintiff's First Amended Petition should be dismissed because the City has governmental immunity from Plaintiff's state law claims. (ECF No. 14 at 24–25). However, Plaintiff's First Amended Petition does not allege any of its state law claims against the City. (ECF No. 13 at ¶¶ 283–305). Further, Plaintiff provides no response to the City's argument. (*See* ECF No. 21). Accordingly, there is nothing for the Court to recommend as to this argument.

### 3. Punitive Damages

The City also argues Plaintiff's claim for punitive damages must be dismissed. (ECF No. 14 at 25). "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Thus, the Court recommends Plaintiff's claims for punitive damages against the City be dismissed.

b.  <u>Newton and Harvey's Motion to Dismiss (ECF No. 15)</u>

Newton and Harvey seek dismissal under Rule 12(b)(4), arguing that Plaintiff's claims are barred by Prosecutorial Immunity.[8]  (ECF No. 15 at 5).

"Prosecutors are absolutely immune from liability under § 1983 for their conduct associated with initiating a prosecution and presenting the state's case because that conduct is closely associated with the judicial phase of the criminal process."  *Shaw v. Pickle*, No. 1:22-cv-442, 2022 WL 18141384, at *2 (E.D. Tex. Nov. 30, 2022), *report and recommendation adopted*, No. 1:22-cv-442, 2023 WL 115570 (E.D. Tex. Jan. 4, 2023) (citing *Imbler v. Patchman*, 424 U.S. 409, 430–31 (1976)).  Prosecutors are not, however, "entitled to absolute immunity when performing administrative or investigative functions."  *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

Plaintiff's factual allegations as to Newton concern the details of her email communications with Plaintiff's attorney regarding the issue of discovery and probable cause.  (ECF No. 13 at ¶¶ 87–88, 90–114, 116–119, 122).  Because "[t]he decision to initiate, maintain, or dismiss criminal charges is at the core of the prosecutorial function," the Court finds that Newton's pursual of the case against Plaintiff falls within the scope of her prosecutorial

---

[8] Newton and Harvey also argue Plaintiff's claims are barred by qualified immunity. (ECF No. 15 at 5).  However, the Court need not reach this argument.

functions. *See Toliver v. Ramsey*, No. 4:20-cv-495, 2021 WL 2878549, at *5 (E.D. Tex. Apr. 13, 2021), *report and recommendation adopted*, No. 4:20-cv-495, 2021 WL 2856839 (E.D. Tex. July 7, 2021); *see also Fortson v. 230th Dist. Ct. Judge*, No. 4:19-cv-1674, 2019 WL 2161550, at *2 (S.D. Tex. May 10, 2019) ("The actions [Plaintiff] complains of are related to the judicial process and were undertaken in furtherance of the attorney's advocacy function in his representation of the government."). Thus, the Court recommends Plaintiff's claims against Defendant Newton in her individual capacity be dismissed.

Plaintiff's Amended Petition is devoid of facts as to Harvey's actions in this case and only generally mentions her name in Plaintiff's causes of action. (ECF No. 13 at ¶¶ 208, 215, 287, 291, 296). Harvey's name is listed in a Houston Police Department report attached as Exhibit 14 to Plaintiff's First Amended Petition. (*Id.* at 125). Under a section titled "Officers Actions/Officers Paragraph," it states:

> Officers were attempting to locate Susp-Joseph Payne whom was wanted for a parole violation warrant and the 2nd suspect in HPD case#1354388-21. I was notified from Det. Thornton assigned to the case that ADA Harvey had accepted multiple felony charges on the suspect for Aggravated Assault Public Servant x3, Aggravated Robbery Deadly Weapon x1 and Felon in Posession [sic] of a Firearm x1 and were [sic] in the process of filing a pocket warrant.

(*Id.*). "The actions [Plaintiff] complains of are related to the judicial process and were undertaken in furtherance of the attorney's advocacy function in his

representation of the government." *Fortson*, 2019 WL 2161550, at *2. Accordingly, the Court recommends Plaintiff's claims against Harvey in her individual capacity be dismissed.[9]

### c. Harris County, Ogg, and the Harris County DA's Office's Motion to Dismiss (ECF No. 17)

Harris County argues Plaintiff's claims must be dismissed for failure to state a claim upon which relief could be granted. (ECF No. 17 at 11). Similarly, Ogg asserts Plaintiff has failed to state a claim against her in both her official and individual capacity. (*Id.*). Finally, the Harris County DA's Office contends Plaintiff's claims must be dismissed because it does not have the capacity to be sued. (*Id.*).

#### i. Harris County

Harris County argues Plaintiff's claims must be dismissed because he has not established the necessary elements of *Monell*. (*Id.* at 16). Harris County also argues "Plaintiff's state claims are precluded as they are intentional torts [sic] and the government retains immunity." (*Id.* at 23).

---

[9] Because Plaintiff's claims against Newton and Harvey in their individual capacities are barred by prosecutorial immunity, they must be dismissed with prejudice. *Arnone v. Syed*, No. 3:17-cv-03027, 2020 WL 2085594, at *5 (N.D. Tex. Apr. 30, 2020) ("[A]bsolute prosecutorial immunity protects [the district attorney] from liability and [plaintiff's] claims against [the district attorney] in his individual capacity are dismissed with prejudice."); *Driver v. Houston Police Dep't*, No. 4:20-cv-3596, 2021 WL 229646, at *1 (S.D. Tex. Jan. 22, 2021) ("[T]he claim must be dismissed with prejudice. Plaintiff's claim against the assistant district attorney is barred by absolute prosecutorial immunity.").

25

1. <u>Section 1983</u>

Plaintiff's First Amended Petition appears to assert three theories of municipal liability: that Harris County (1) had multiple unconstitutional policies, practices, and/or customs, (2) failed to adequately train or supervise, and (3) ratified unconstitutional conduct. As previously explained, Plaintiff "must plead facts that plausibly support each element of § 1983 municipal liability under" each of his theories. *Pena*, 879 F.3d at 621.

a. *Policy Liability*

Just as with Plaintiff's claims against the City, to assert a § 1983 claim against Harris County, Plaintiff "must allege three elements: (1) a policymaker; (2) an official policy or custom; and (3) 'a violation of constitutional rights whose moving force is the policy or custom.'" *Kennard v. City of Houston*, No. 4:22-cv-3365, 2023 WL 159782, at *3 (S.D. Tex. Jan. 11, 2023), *appeal dismissed*, No. 23-20046, 2023 WL 5125068 (5th Cir. Apr. 3, 2023) (quoting *Monell*, 436 U.S. at 691).

Harris County argues Plaintiff's claims fail because "Plaintiff has not identified any specific, officially-promulgated [sic] written policy statement, regulation or decision of Harris County that allegedly caused a violation of Plaintiff's constitutional rights." (ECF No. 17 at 16). Plaintiff's First Amended Petition alleges:

26

>Acting under color of law, by and through the policy makers of the County and pursuant to official policy or custom and practice, the County of Harris intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of the County of Harris and to the Plaintiff, failed to instruct, supervise, control, and/or discipline, on a continuing basis, Defendants Ogg, Harvey and Newton in the performance of their duties to refrain from: Conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiffs by the Constitution and Laws of the United States and the Laws of the State of Texas; and Otherwise depriving citizens and individuals of their constitutional and statutory rights, privileges, and immunities.

(ECF No. 13 at ¶ 208).

Plaintiff's First Amended Petition also alleges:

(1) "[I]t was the policy and/or custom of [D]efendant County . . . to inadequately hire, train, supervise, discipline and/or terminate their district attorneys, officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their district attorneys, officers, staff, agents, and employees." (*Id.* at ¶¶ 243, 278).

(2) "Defendants had a policy and/or custom of maliciously prosecuting individuals despite the lack of probable cause."[10]  (*Id.* at ¶ 242).

---

[10] Plaintiff asserts this claim against "All Defendants." (*See id.* 13 at ¶¶ 237–48).

27

(3) "[I]n 2021, Defendant County . . . had a policy or routine practice of alleging facts against persons for the purpose of charging crimes they did not commit." (*Id.* at ¶ 247).

(4) "Defendants had a policy and/or custom of failing to intervene to protect citizens from false arrest, imprisonment and malicious prosecution by police officers and district attorneys."[11]  (*Id.* at ¶ 277).

As with Plaintiff's claims against the City, Plaintiff points to no formal policy statement.  Thus, Plaintiff must demonstrate Harris County's liability by establishing a pattern of unconstitutional conduct, or that a final policymaker took a single unconstitutional action.  *Schweitzer*, 2024 WL 1348415, at *13.

Plaintiff argues he has "alleged a pattern and custom of abusive conduct resulting in egregious civil rights violations under the reign of District Attorney Ogg."  (ECF No. 20 at 9).  Plaintiff then repeats portions of the "additional facts" section provided in his First Amended Petition.  (*Id.* at 9–10; *see also* ECF No. 13 at ¶¶ 189–191, 193–196).  Plaintiff contends "[t]hese violations demonstrate a pattern and custom established by the policy maker,"

---

[11] Plaintiff asserts this claim against "All Defendants."  (*See id.* at ¶¶ 272–82).

which Plaintiff identifies as Ogg, that "is attributable to Harris County as its unconstitutional policy." (ECF No. 20 at 10).

As the Court stated earlier, "[a] pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Peterson*, 588 F.3d at 851 (quoting *Est. of Davis*, 406 F.3d at 383). It is Plaintiff's burden to show a pattern of *similar and specific* violations. *Sligh*, 87 F.4th at 303. As argued by Defendants, "vague reference[s] to a handful of incidents" that lack relevant information and factually vary do not establish a pattern. (ECF No. 22 at 3–4; *see also* ECF No. 17 at 19 ("Plaintiff does not allege facts that the 10 cases listed have sufficiently similar facts to create a pattern. Many of the cases listed have no date, no case number, do not have the same charge [that] Plaintiff had in his criminal case, and were not resolved in the same manner.")). Thus, the Court finds Plaintiff fails to plead (1) a policy to inadequately supervise and train, (2) a policy of maliciously prosecuting individuals, (3) a 2021 policy or routine practice of alleging facts against persons for the purpose of charging crimes they did not commit, or (4) a policy of failing to intervene to protect citizens from false arrest, imprisonment, and malicious prosecution. *See, e.g.*, *Sligh* at 851 n.4 ("Twenty-seven incidents in four years, with no context as to the overall number of arrests or any comparisons to other cities,

is not sufficient evidence of a pattern rising to the level of a[n excessive force] policy."); *West*, 2023 WL 5760032, at *7 (finding inadequate-training allegations insufficient because the plaintiff failed to allege with any specificity how the program was defective); *Reyes*, 686 F. Supp. 3d at 548 (finding plaintiff "failed to plead a custom of malicious prosecution because he did not point to similar violations").

### b. *Failure to Train or Supervise*

As noted above, Plaintiff's failure to train or supervise theory requires him to prove that "1) [Harris County] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Pena*, 879 F.3d at 623 (internal quotation omitted).

Just as with his claims against the City, Plaintiff's First Amended Petition repeats the general allegation that Harris County failed to train (*see* ECF No. 13 at ¶¶ 214, 243, 278) or supervise (*id.* at ¶¶ 208, 214, 216, 243, 278) throughout the petition. However, "Plaintiff[] do[es] not provide any facts from which the court can draw a causal connection between any failure to train [or supervise] and the alleged constitutional violations." *See Garcia*, 2022 WL 2230469, at *3. Further, Plaintiff's assertions that Harris County acted with

30

"deliberate indifference," without factual support, does not sufficiently allege the "pattern of similar constitutional violations by untrained employees" necessary to satisfy the deliberate indifference prong. *Hutcheson*, 994 F.3d at 482 (internal quotations omitted). Thus, the Court recommends Plaintiff's claims against Harris County under a failure to train or failure to supervise theory be dismissed.

### c. Ratification

Plaintiff also argues Harris County ratified "the unconstitutional conduct in this case." (ECF No. 20 at 12). As previously explained, to sufficiently allege his ratification theory, Plaintiff must show "'knowing approval by a policymaker of both conduct and its underlying, improper basis.'" *Garcia*, 2024 WL 1291531, at *6 (quoting *Taylor*, 488 F. Supp. 3d at 537). Here, Plaintiff alleges the following in his First Amended Petition: "Defendant County, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants Ogg, Harvey and Newton heretofore described. Defendant County had actual notice of previous problems and complaints concerning the Houston Police Department yet failed to take corrective action." (ECF No. 13 at ¶ 215). Plaintiff further alleges, "Defendant County had actual notice of previous supervisory concerns with Defendant City and the Harris County Police

Department.  Kim Ogg personally apologized to the family for the botched drug raid that happened with Officer Goins.  Her office is also the one prosecuting Officer Goins for murder." (*Id.* at ¶ 216).

Harris County argues it neither has authority nor control over the Houston Police Department as it is a separate entity from Harris County. (ECF No. 17 at 22).  Further, no factual allegations show that a policymaker knowingly approved Ogg, Harvey, or Newton's actions despite knowing they were improper. *Garcia*, 2024 WL 1291531, at *7 (granting a motion to dismiss on a ratification theory that lacked factual allegations as to a policymaker's knowledge).  As explained with Plaintiff's claims against the City, Plaintiff's conclusory allegations do not provide the Court with facts showing that a policymaker approved the alleged unconstitutional conduct described in the complaint, whether or when a policymaker learned about the alleged conduct, or whether a policymaker made a statement approving of or in defense of the alleged conduct. *See Garcia*, 2022 WL 2230469, at *4.

Thus, the Court finds Plaintiff's First Amended Petition does not provide the facts necessary to support ratification.  Accordingly, the Court recommends that Plaintiff's §1983 claims against Harris County be dismissed.

### 2. State Law Claims

Harris County also argues Plaintiff's First Amended Petition should be dismissed because it has immunity from Plaintiff's state law claims. (ECF No. 17 at 23). However, Plaintiff's First Amended Petition does not allege any of its state law claims against Harris County. (ECF No. 13 at ¶¶ 283–305). Further, Plaintiff provides no response to Harris County's argument. (*See* ECF No. 20). Accordingly, there is nothing for the Court to recommend as to this argument.

### ii. Ogg

Ogg argues Plaintiff has failed to state a claim against her in both her official and individual capacity. (ECF No. 17 at 23).

### 1. Official Capacity

Ogg asserts Plaintiff's claims against her should be dismissed because they are redundant and identical to those against Harris County. (*Id.*).

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In contrast, official-capacity claims "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell*, 436 U.S. at 690 n.55). Official-capacity claims are treated as one against the entity, which is the real

party-in-interest. *Id.* at 166. When a government-official defendant is sued in her official capacity, and the governmental entity is also sued, "[t]he official-capacity claims and the claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000).

"Fifth Circuit case law supports dismissing official-capacity claims as redundant when the appropriate governmental entity is also named as a defendant." *Brown v. City of Houston, Tex.*, No. 4:17-cv-1749, 2019 WL 7037391, at *3 (S.D. Tex. Dec. 20, 2019) (collecting cases). Importantly here, "[a]n official-capacity claim against Ogg is the same as the claim against Harris County, different in name only." *Id.* at *5. Thus, because "[t]he official-capacity claims against Ogg duplicate the claims against Harris County," the Court recommends Plaintiff's claims against Ogg be dismissed. *Id.* at *6.

## 2. Individual Capacity

Ogg also argues that Plaintiff's claims against her in her individual capacity should be dismissed because she is immune from suit. (ECF No. 17 at 24). Plaintiff responds to this argument, arguing Ogg is not immune from suit in her individual capacity. (ECF No. 20 at 17). However, Plaintiff's First Amended Petition does not allege any claims against Ogg in her individual capacity. (*see* ECF No. 13 at 23 (stating "Ogg in their official capacity" but

34

never stating Ogg was sued individually)).  Thus, there is nothing for the Court to recommend as to this argument.

### iii.  Harris County DA's Office

The Harris County DA's Office argues Plaintiff's claims fail because the Harris County DA's Office does not have separate jural authority or legal existence.  (ECF No. 17 at 26).  Plaintiff did not respond to this argument (*See* ECF No. 20), "effectively abandoning their claims against" the Harris County DA's Office.  *Chavez*, 550 F. Supp. 3d at 449; *see also Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding that the plaintiff's "failure to pursue [a] claim beyond [the] complaint constitute[s] abandonment." (citation omitted)); *Brackens v. Ocwen Loan Servicing, LLC*, No. 3:13-cv-3458, 2015 WL 1808541, at *4 (N.D. Tex. Apr. 21, 2015) ("Because Plaintiff failed to address Defendant's arguments in a response, he has abandoned his wrongful foreclosure claim.").  Accordingly, the Court recommends Plaintiff's claims against the Harris County DA's Office be dismissed.[12]

---

[12] Even if Plaintiff had responded, the Court would still recommend dismissal because the Harris County DA's Office is a non-jural entity.  *See Brown*, 2019 WL 7037391, at *3 (noting that the Harris County DA's Office is a non-jural entity); *Kundra v. Dall. Cnty. Jail*, No. 3:06-cv-684, 2007 WL 1159661, at *2 (N.D. Tex. Apr. 19, 2007) (holding non-jural entities should be dismissed with prejudice under Rule 12(b)(6)).

## IV.   Leave to Amend

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner which will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  The decision to allow amendment of a party's pleadings is within the sound discretion of the district court.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Avatar Expl., Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991).

"Although leave to amend should not be automatically granted, '[a] district court must possess a substantial reason to deny a request for leave to amend[.]'" *Tucker Energy Servs., USA, Inc. v. Ricoh Ams. Corp.*, No. 4:12-cv-0417, 2012 WL 2403513, at *1 (S.D. Tex. June 25, 2012) (quoting *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)).  Under Rule 15(a), "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).

As to Plaintiff's claims against the Houston Police Department, Newton, Harvey, Ogg, and the Harris County DA's Office, any amendment would be futile. *See Brown*, 2019 WL 7037391, at *6. Accordingly, as to these Defendants, the Court recommends Plaintiff's complaint be dismissed with prejudice.

As to the City and Harris County, the Court notes that Plaintiff requests an opportunity to amend his petition. (ECF No. 20 at 20; ECF No. 21 at 20). However, Plaintiff has already amended his petition once in response to a motion to dismiss by the City and Harris County, which largely raised the same arguments. (ECF Nos. 6–7). Further, "Plaintiff[] do[es] not state what facts they would provide to address the deficiencies in their First Amended [Petition]." *Garcia*, 2022 WL 2230469, at *4. Thus, Plaintiff appears "unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co.*, 313 F.3d at 329. Accordingly, as to the City and Harris County, the Court recommends Plaintiff's complaint be dismissed with prejudice.

## V.     Conclusion

Based on the foregoing, the Court **RECOMMENDS** the City's Motion to Dismiss (ECF No. 14) be **GRANTED**, Newton and Harvey's Motion to Dismiss (ECF No. 15) be **GRANTED**, and Harris County, Ogg, and the Harris County DA's Office's Motion to Dismiss (ECF No. 17) be **GRANTED**. Accordingly, the

Court **FURTHER RECOMMENDS** Plaintiff's claims against the City, the Houston Police Department, Newton, Harvey, Harris County, Ogg, and the Harris County DA's Office be **DISMISSED WITH PREJUDICE**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on July 24, 2024.

Richard W. Bennett
United States Magistrate Judge